IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

NICHOLAS DORADO, Individually and
on Behalf of all others Similarly Situated                              PLAINTIFF

v.                                      No. 4:19-cv-573-DPM

ST. VINCENT COMMUNITY HEALTH
SERVICES, INC.; ST. VINCENT
INFIRMARY MEDICAL CENTER;
CATHOLIC HEALTH INITIATIVES
PHYSICIAN SERVICES, LLC; and
FIRST INITIATIVES INSURANCE, LTD.                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

Dorado was injured in a car accident. St. Vincent treated him. The hospital then sought and received payment from Dorado's insurer, Health Advantage. It also put a lien on his tort claim against the driver who caused the accident. Dorado says St. Vincent failed to tell him about the lien or that St. Vincent would seek payment from any source in addition to his insurer. *Doc. 2 at* ¶¶ 40–41. And he says the lien cost him some of his settlement proceeds from the other driver's liability insurer. Dorado has sued for himself, and intends to seek certification

of a class of others that St. Vincent has treated similarly. His complaint repeatedly invokes the provider agreement between St. Vincent and Health Advantage. St. Vincent argues that an arbitration clause in that agreement covers all of Dorado's claims in this litigation, and the clause does not permit class arbitration.

By bringing this case, has Dorado bound himself to the provider agreement's arbitration clause, even though he never signed that agreement? This Court—not an arbitrator—must decide. *Local 36 Sheet Metal Workers' International Association, AFL-CIO v. Whitney*, 670 F.3d 865, 869 (8th Cir. 2012). Dorado doesn't challenge the validity of the arbitration clause, only St. Vincent's assertion that he's bound to it. The answer to the deep question depends on whether Dorado is "seeking to enforce the terms of [the provider agreement] or asserting claims that must be determined by reference to that contract." *Reid v. Doe Run Resources Corp.*, 701 F.3d 840, 846 (8th Cir. 2012). If so, then he is—the argument goes—estopped to avoid the arbitration clause. And the estoppel analysis, in turn, depends on traditional principles of state contract law. *Ibid.*; *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009).

As best the Court can tell, Dorado is right that no Arkansas case has bound a non-signatory to arbitration based on equitable estoppel.

The Arkansas Court of Appeals has said this is possible. *Sterne, Agee & Leach, Inc. v. Way*, 101 Ark. App. 23, 27, 270 S.W.3d 369, 374 (2007). But *Sterne* does not hold that the non-signatory was bound. The closest Arkansas Supreme Court cases are *American Insurance Co. v. Cazort*, 316 Ark. 314, 871 S.W.2d 575 (1994), and *Bigge Crane & Rigging Co. v. Entergy Arkansas, Inc.*, 2015 Ark. 58, 457 S.W.3d 265 (2015).

Reading *Cazort* and *Bigge Crane* together, this Court predicts that the Arkansas Supreme Court would bind Dorado to arbitration on all his claims. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010). A venerable principle of estoppel does the work in *Cazort* and *Bigge Crane*: if a contract has an arbitration clause, then claims arising from that contract should go to arbitration, even if one of the parties in the dispute did not sign the contract. *Cazort* involved, as Dorado emphasizes, a non-signatory seeking to compel arbitration by a signatory. This case presents the reverse situation. But, in compelling arbitration, the *Cazort* Court applied settled estoppel doctrine, relying in part on a district court case that bound a non-signatory to an arbitration agreement. 316 Ark. at 322, 871 S.W.2d at 579; *A.L. Williams & Associates, Inc. v. McMahon*, 697 F. Supp. 488 (N.D. Ga. 1988). *Cazort* involved a breach of contract claim, plus related tort and statutory claims. Because they were all animated by the contract in question, all

the claims went to arbitration.  The Arkansas Supreme Court reasoned that Cazort "cannot have it both ways" — he "cannot rely on the contract when it works to [his] advantage and ignore it when it works to [his] disadvantage."   316 Ark. at 322, 871 S.W.2d at 579-80 (quotation omitted).  As St. Vincent notes, this principle has deep roots in Arkansas law.  *E.g., Commodity Credit Corp. v. American Equitable Assurance Co. of New York*, 198 Ark. 1160, 133 S.W.2d 433, 441 (1939).  *Bigge Crane* confirmed the principle's continuing vitality.  The negligence claims in that case didn't go to arbitration, though, because they didn't arise from the contract containing the arbitration clause.  2015 Ark. at 13-14, 457 S.W.3d at 273-74.

As in *Cazort*, the provider agreement between St. Vincent and Health Advantage animates all of Dorado's claims.  His third-party-beneficiary claim for breach of the provider agreement turns on the contract.  So do the others.  As pleaded, his ADTPA, tortious interference, and unjust enrichment claims are all grounded in St. Vincent's alleged contractual obligation to seek payment only from Health Advantage.  All the claims must therefore go to arbitration.

Whether the provider agreement disavows third party beneficiaries is murky.  It says that "[u]nless explicitly provided in this Agreement...", the parties do not intend "to create third party

beneficiary status or rights[.]" *Doc. 17 at ¶ X*. The next section, though, has contrary language. It bars St. Vincent from seeking any payment (beyond co-payments, co-insurance, deductibles, and for non-covered services) from the patient. *Doc. 17 at ¶ XI*. This non-recourse term is an obvious benefit to Dorado and others similarly situated. This section's provisions must also be "construed to be for the benefit of" patients; and they supersede any pre-dating or post-dating agreements between patients and St. Vincent. *Doc. 17 at ¶ XI.C*. This murkiness about whether Dorado is a third party beneficiary doesn't change the estoppel analysis. He pleads that he is. Whether he's correct or not, the provider agreement animates all of Dorado's claims, and he's estopped to take the sweet but not the bitter. *Cazort*, 316 Ark. at 322, 871 S.W.2d at 579–80; *Williams Manufacturing Co. v. Strasberg*, 229 Ark. 321, 325, 314 S.W.2d 500, 503 (1958).

Dorado argues that it makes no sense to bind a consumer to an arbitration agreement that incorporates rules for commercial disputes. *Doc. 22 at 14*. He notes the commercial and consumer rules have different cost and attorney's fee provisions. St. Vincent doesn't respond to this point. Dorado doesn't cite any authority for why the differences he has highlighted prevent binding him to arbitration in these circumstances. And he hasn't argued or demonstrated that the cost and

attorney's fee provisions are so onerous that it's impossible for him to participate in arbitration. The fit is admittedly imprecise, but this is a function of the circumstances—a consumer who is asserting claims arising out of a contract between two businesses. The Court is unpersuaded that the fit issues undermine the arbitration clause.

Dorado argues that if he's bound to arbitration, then it should be class-wide. St. Vincent disagrees. The provider agreement's arbitration clause doesn't address whether an arbitrator should resolve this question, so the Court must answer it. *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972–73 (8th Cir. 2017). This clause doesn't permit class-wide arbitration because it is silent on the matter. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347 (2011); *Catamaran Corp. v. Towncrest Pharmacy*, 946 F.3d 1020, 1023 (8th Cir. 2020). Dorado argues for a class proceeding nonetheless, emphasizing that he never agreed to arbitrate in the first place. Again, his argument describes the circumstances presented but is not persuasive. His not agreeing to arbitrate doesn't prevent him from being bound to arbitration; similarly, his lack of consent doesn't answer the class question. Dorado is bound to individual arbitration.

\* \* \*

St. Vincent's motion to compel arbitration, *Doc. 12*, is granted. First Initiatives' echoing motion, *Doc. 34*, is likewise granted. The Court refers all of Dorado's claims to arbitration. The case is stayed and administratively terminated. *Webb v. R. Rowland & Co.*, 800 F.2d 803, 807–8 (8th Cir. 1986). Any party may move to reopen, if need be, when arbitration concludes. Joint status report due by 8 January 2021 and every six months thereafter until arbitration is concluded.

So Ordered.

*/s/ DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

21 August 2020